UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MICHELLE MORALES,                                    :

                Plaintiff,                        :        OPINION AND ORDER

       -against-                              :
                                                                        19 Civ. 1186 (GWG)
NANCY A. BERRYHILL,
                                                     :
                Defendant.
-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Michelle Morales brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (the "Commissioner")

denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income

benefits ("SSI") under the Social Security Act (the "Act").   Both parties have moved for

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]   For the reasons

stated below, Morales's motion is denied and the Commissioner's motion is granted.

---

[1]   See Plaintiff's Motion for Judgement on the Pleadings, filed Aug. 12, 2019 (Docket # 15); Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed Aug. 12, 2019 (Docket # 16) ("Pl. Mem."); Defendant's Motion for Judgment on the Pleadings, filed Nov. 14, 2019 (Docket # 19); Memorandum of Law in Support for Defendant's Motion for Judgment on the Pleadings, filed Nov. 14, 2019 (Docket # 20) ("Def. Mem."); Reply Memorandum of Law in Support of Plaintiff's Motion for Judgement on the Pleadings, filed Dec. 5, 2019 (Docket # 21) ("Reply").

I.  BACKGROUND

   A.  Procedural History

   Morales applied for DIB and SSI on July 13, 2015.   See SSA Administrative Record,

filed June 11, 2019 (Docket # 13) ("R.") at 289-309.   She alleged that her disability began on

April 1, 2013,[2] R. 24-25, 27, 311, 383, when she was 33 years old, see Pl. Mem. at 1.   The

Social Security Administration ("SSA") denied the application on September 24, 2015, R. 174,

and Morales sought review by an Administrative Law Judge ("ALJ"), R. 190.   A hearing was

held on January 3, 2018.   R. 82, 84.   In a written decision dated January 22, 2018, the ALJ

found Morales was not disabled.   See R. 21-37.   On December 12, 2018, the Appeals Council

denied Morales's request for review of the ALJ's decision.   R. 1.   This action followed.

   Because Morales does not challenge the ALJ's findings regarding her physical

impairments, Pl. Mem. at 1 n. 4, we address evidence and findings only with respect to her

mental impairments.

   B.  The Hearing Before the ALJ

   The hearing was held by video before an ALJ in Falls Church, Virginia.   R. 24, 82, 84.

Morales and her representative, Rene Moore, were in New York, New York.   R. 82, 84.

   Morales testified that she lived in New York with her 18-year-old son.   See R. 91.

Although she has a driver's license, she does not own a car and has not driven in the past eight

years.   Id.   She uses the subway and buses to get around, but sometimes gets confused.   R. 92.

Morales has an 11th-grade education.   Id.

---

   [2]   The record refers to several claimed onset dates.   See R. 290 (Jan. 1, 2013); R. 24-25,
27, 311, 383 (April 1, 2013); Pl. Mem. at 1 (April 11, 2013).   We use the April 1, 2013, date
because it is the date accepted by the ALJ (R. 24) and Morales has not presented any argument
that it is incorrect.

2

Morales has not worked since 2016.   R. 123.   In 2016, Morales worked as a filer in an office.   R. 93.   She worked about five hours a day, two-to-four days a week.   R. 94.   In 2014, she was self-employed doing the same kind of work.   Id.   Morales testified that she "never really worked a whole year" and that she "always filed."   R. 95.   In 2006, she worked for Charisma Courier as a messenger taking papers from one office to another.   Id.   She also worked for a temporary agency doing various jobs including messenger and cleaning.   R. 96.   Morales also worked as a pharmacy technician, which required giving the prepared medicine to the customer.   R. 96-97.   Morales's other work was "like babysitting files" and one time she "got to scan the files into a computer."   R. 98.   Filing for her "was putting the papers with the person's name, and the chart with the same name, and the same date of birth."   R. 122.   Morales testified that she struggled with other office duties like answering the phone, taking messages, or typing, saying, "I have no concentration."   Id.

Morales described her mental health issues as being "mad and sad at the same time." R. 104.   She said that she "struggled with that for a lot of years growing up.   Growing up, I remember being in — being in and out of hospitals, psych wards."   R. 104.   She also said she "get[s] more enraged when I'm around a lot of people" and that she is "a nervous person." R. 104-05.   Morales is "always lashing out" because she has "a lot of anger" and is "mentally mean."   R. 116.   She also can get physically violent.   R. 117.   Morales goes to individual therapy once a week, which has helped a little.   R. 105.   She also takes medicine for her mental health, which also helps "[a] little," R. 103, but she does not like that it makes her feel slower, R. 117-18.

Morales can go to the grocery store when she needs to.   See R. 110-11.   When she is home alone, she makes herself meals and tries "to be relaxed so [she] can have peace of mind."

3

R. 111.   She likes to do art and color, but only when she is happy.   Id.   She sometimes talks to

her friends on the phone, or watches videos on her phone.   R. 112.   She also has a Facebook

account which she uses to connect with a few friends but mainly posts videos, id., and she only

uses it for 30 minutes once or twice a week, R. 114-15.   She does laundry, cleans the apartment,

and sometimes makes dinner for her son.   R. 113.   She occasionally drinks wine.   R. 104.   Her

son does not bring his friends over because Morales is "bothered by that."   R. 114.

The ALJ consulted a vocational expert ("VE"), Cindy Burnett, by phone, R. 124, who

identified Morales's past work as an office helper and cashier, R. 125.   The ALJ asked the VE

the following question:

> Let me ask you to assume that we have an individual of the claimant's age,
> educational background, and the work experience that you testified to.   That
> person would be limited to light work exertionally, as defined by the dictionary of
> occupational titles.   The individual would further be limited to the performance
> of only unskilled work, would be limited to having occasional interaction with
> members of the general public and coworkers, but generally should work on tasks
> alone.   And she would be precluded from fast-paced or strict time limited tasks,
> such as assembly line or strict quota type work.   Would that hypothetical
> individual be able to perform any of the past work you identified?

R. 125-26.   The VE responded that such a person could perform the job of office helper, but not

cashier.   R. 126.   The VE also testified that such a person could find work in the national

economy as a housekeeper, laundry worker, and mail room clerk.   R. 126.   However, all

employment options would be eliminated if the person had to miss work two-to-three days a

month.   R. 127.   All employment options would also be eliminated if the person required that a

supervisor be readily available to answer questions, provide redirection, or check in on the

employee about once an hour.   Id.

Moore then asked the VE "if an individual had moderate limitations, and moderate being

defined as up to one-third of the day, maintain attention and concentration.   Would that

4

limitation allow the performance of unskilled work on a sustained basis?"   R. 127-28.   The VE

testified "that would eliminate employment."   R. 128.   Moore also asked "[i]f an individual was

similarly moderately limited up to one-third of the day, making appropriate decisions, work

place decisions, would that limitation allow for the performance of unskilled work?" and the VE

responded "[n]o."   Id.   The VE also testified that there would be no employment opportunities

if "an individual had marked limitations, meaning constant interference with the ability to

respond appropriately to supervisors . . . accept instructions and respond appropriately to

criticism from supervisors."   R. 128.

    C.   The Medical Evidence

Both Morales and the Commissioner have provided detailed summaries of the medical

evidence.   See Pl. Mem. at 1-9; Def. Mem. at 3-12.   The Court had directed the parties to

specify any objections they had to the opposing party's summary of the record, see Scheduling

Order, filed June 13, 2019 (Docket # 14) ¶ 5, and neither party has done so.   Accordingly, the

Court adopts the parties' summaries of the medical evidence as accurate and complete for

purpose of the issues raised in this suit.   We discuss the medical evidence pertinent to the

adjudication of this case in Section III below.

    D.   The ALJ's Decision

The ALJ denied Morales's application on January 22, 2018.   R. 21.   Following the five-

step test set forth in SSA regulations, the ALJ found at step one that Morales met the insured

status requirements and had not engaged in "substantial gainful activity since April 1, 2013."

R. 27.   At step two, the ALJ found that Morales had the following severe impairments: "lumbar

degenerative disc disease; post traumatic stress disorder."   Id. (citations omitted).

At step three, the ALJ concluded that none of Morales's severe impairments singly or in

combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.   R. 28.   The ALJ specifically considered sections in listing 1.04, disorder of the

spine, and 12.15, trauma- and stressor-related disorders.   Id.   Specifically, he considered

whether the "paragraph B" criteria were met.   Id.   These require that "the mental impairment

must result in at least one extreme or two marked limitations in a broad area of functioning

which are: understanding, remembering, or applying information; interacting with others;

concentrating, persisting, or maintaining pace; or adapting or managing themselves."   Id.   The

ALJ found Morales to have a mild limitation "[i]n understanding, remembering, or applying

information"; a moderate limitation "[i]n interacting with others"; and a moderate limitation in

"concentrating, persisting, or maintaining pace."   R. 28-29.   He found Morales has no

limitation in "adapting or managing oneself."   R. 29.   He also found that she does not meet the

"paragraph C" criteria listed in 12.015,

> because she does not have a medically documented history of chronic affective
> disorder of at least 2 years' duration that has caused more than a minimal
> limitation of ability to do basic work activities, with symptoms or signs currently
> attenuated by medication or psychosocial support, and one of the following:
> repeated episodes of decompensation, each of extended duration; a residual
> disease process that has resulted in such marginal adjustment that even a minimal
> increase in mental demands or change in the environment would be predicted to
> cause the individual to decompensate; or a current history of one or more years'
> inability to function outside of a highly supportive living arrangement, with an
> indication of continued need for such an arrangement.

Id.

The ALJ then assessed Morales's residual functional capacity ("RFC").   Id.   The ALJ

determined that Morales retained the ability to perform light work, as defined in 20

C.F.R. 404.1567(b), 416.967(b), and SSR 83-10 except she is limited to "simple tasks consistent

with unskilled work.   She can have occasional interaction with the general public and

coworkers, but she should generally work alone on tasks.   Finally, she may not perform

fast-paced or strictly time-limited tasks such as assembly line or strict quota work."   Id.   In

making this determination, the ALJ followed a two-step process under which he first

"determined whether there is an underlying medically determinable physical or mental

impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other

symptoms" and then evaluated "the intensity, persistence, and limiting effects of the claimant's

symptoms to determine the extent to which they limit the claimant's functional limitations."

R. 30.

   The ALJ considered Morales's description of her impairments but found that her

"statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence" and described the testimonial and objective

medical evidence that caused him to reach this conclusion.   R. 30-32.   He also evaluated the

opinion evidence in the record.   R. 32-35.   This examination included an evaluation of the

opinions of Doctors Stapert, Nobel, Marantz, Mbadugha, and Graziano.   R. 32-35.

   The ALJ gave partial weight to the opinion of Dr. Stapert.   R. 32.   Specifically, the ALJ

found that Dr. Stapert's opinion that Morales "was moderately limited in her ability to maintain

attention and concentration; maintain a regular schedule; make appropriate decisions; relate

adequately with others; and deal appropriately with stress" was "consistent with her findings of

below-average cognitive functioning and impaired concentration[,] . . . the claimant's history of

trauma, her legal history, and with her reported symptoms of avoidance and irritability."   Id.

While Dr. Stapert determined that Morales has a marked limitation "in her ability to learn new

tasks and perform complex tasks independently," the ALJ found that Morales's "concentration

and memory deficits justify some limitation on the claimant's ability to learn new tasks, but I do

not see this to be marked except in the context of complex work."   Id.

The ALJ gave "great weight" to the opinion of Dr. Nobel, a state agency consultant who

did not examine Morales.   Id.   The ALJ described Dr. Nobel's opinion as finding Morales to be

"moderately limited in maintaining social functioning and concentration," specifically,

> moderately limited in ability to remember and carry out detailed instructions, to
> maintain attention for extended periods, to perform activities within a schedule,
> and to complete a normal workday without interruptions from psychologically
> based symptoms.   Dr. Nobel also felt that the claimant was moderately limited in
> her ability to respond to criticism from supervisors, to get along with coworkers
> without distracting them, or to respond appropriately to changes in the work
> setting.

R. 32-33 (referencing R. 150-171).

The ALJ gave the opinion of Dr. Marantz, Morales's treating psychologist, partial

weight.   See R. 33.   "Dr. Marantz opined that the claimant was unable to work, and that she

was markedly limited in her ability to remember and understand simple and detailed instructions

and procedures" and that Morales "was moderately- to markedly or markedly impaired in every

other aspect of mental functioning."   Id. (referencing R. 443-47).   The ALJ specifically gave

"little weight where her opinion finds the claimant severely restricted as regards simple

one-to-two step instructions[,] . . . to her statement that the claimant cannot work due to her

psychological condition[, and] . . . to her unexplained, speculative assessment that the claimant

would likely be absent from work more than three times a month."   Id.   The ALJ also noted that

"the degree of her limitations is excessive compared to the moderate psychological findings of

the record as a whole."   Id.

The ALJ gave "partial but much greater weight" to the opinion of Dr. Mbadugha, who

was a psychiatrist that treated Morales.   Id.   As stated by the ALJ, Dr. Mbadugha noted that

Morales was "markedly impaired in her ability to maintain attention or concentration for

extended periods, to work with others without being distracted, to interact appropriately with the

public, or to get along with coworkers without distracting them."   Id. (referencing R. 453-61).

Also, Dr. Mbadugha also determined that Morales was "moderately-to-markedly limited in her

ability to remember work procedures, and to complete a workday without interruptions from

psychologically based symptoms [and] . . . she was moderately impaired in her ability to

understand, remember, and carry out detailed instructions, and to perform at a consistent pace,

and to maintain socially appropriate behavior."   Id. (referencing R. 453-61).   The ALJ also

noted that Dr. Mbadugha "did not anticipate any barriers to the claimant working full time."   Id.

(citing R. 461).   The ALJ found that Dr. Mbadugha's opinion was "generally consistent with the

opinion of the psychological consultative examiner, and with the record as a whole" but that "his

marked limitations are obviated or accommodated by the restrictions given in this finding:

limiting the claimant's interaction with others, limiting her to simple tasks consistent with

unskilled work, and precluding stressful, fast-paced work."   Id.

　　　　The ALJ gave "little weight to the opinion of examining psychologist James Ellis, Ph.D."

R. 34 (citing R. 976-984).   Although Dr. Ellis's name is on documents within the record, a Dr.

Graziano, who is not mentioned by name in the ALJ's decision, apparently examined Morales

under the office of Ellis Psychology, PLLC, see R. 976-84; see also Pl. Mem. at 12 n. 11, and

signed the documents in the record, see, e.g., R. 980.   According to the ALJ, Dr. Graziano found

Morales to be "markedly impaired in her ability to perform activity within a schedule, to make

simple work-related decisions, to complete a workday without interruptions from

psychologically-based symptoms, to interact appropriately with the public, to get along with coworkers, and to maintain socially appropriate behavior."   R. 34.   The ALJ also noted that Dr. Graziano determined Morales to be "moderately to markedly impaired in her ability to carry out detailed instructions, to maintain attention for extended periods, to sustain an ordinary routine without supervision, to accept instructions, and to respond appropriately to criticism from supervisors" and "moderately limited in her ability to understand, remember, and carry out one- or two-step instructions, to ask simple questions, to adhere to basic standards of neatness, and to respond appropriately to changes in the workplace."   Id.   But Dr. Graziano did not have a "longitudinal treating relationship" with Morales because he "examined her on only a single occasion for evaluation at the behest of [her] representative."   Id.   Furthermore, his conclusions were not explained in term of findings and were inconsistent with the record.   Id.

At step four, the ALJ concluded that Morales was "capable of performing past relevant work as an Office Helper and Cashier."   R. 35.   The ALJ found that Morales could perform the positions as they are actually and generally performed.   Id.   The ALJ noted that the VE testified that "a person of the claimant's age, education, and vocational experience — and subject to the restrictions . . . — could perform the claimant's past job of Office Helper."   Id.   The ALJ noted that the VE also testified that the same person could perform the jobs of housekeeper, laundry worker, and mailroom clerk, which the ALJ found existed in the national economy in significant numbers.   R. 36.   Thus, "[b]ased on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."   Id.   Accordingly, the ALJ determined that Morales was not

disabled under the Act.   Id.

## II.   GOVERNING STANDARDS OF LAW

### A.   Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."   Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."   Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).   Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."   Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled."   Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).   Rather, substantial evidence is "more than a mere scintilla."   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).   "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted).   The "threshold for such evidentiary sufficiency is not high."   Id.   The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."   Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citations and internal quotation marks omitted).   "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision."   Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).

   B.   Standard Governing Evaluation of Disability Claims by the Agency

   The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).   A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

   To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience."   Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d

Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y.

2016).

　　　　Regulations issued pursuant to the Act set forth a five-step process that the Commissioner

must use in evaluating a disability claim.   See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see

also Burgess, 537 F.3d at 120 (describing the five-step process).   First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity."   20

C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   Second, if the claimant is not engaged in

substantial gainful activity, the Commissioner must decide if the claimant has a "severe

medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c),

416.920(c).   Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be

found disabled regardless of his or her age, education, or work experience.   See id.

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).   Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must

review the claimant's RFC to determine if the claimant is able to do work he or she has done in

the past, i.e., "past relevant work."   Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the

claimant is able to do such work, he or she is not disabled.   Id. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).   Finally, if the claimant is unable to perform past relevant work, the

Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and

work experience, permits the claimant to do other work.   Id. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).   If the claimant cannot perform other work, he or she will be deemed disabled.

Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   The claimant bears the burden of proof on all steps

except the final one — that is, proving that there is other work the claimant can perform.   See

Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

   C.   The "Treating Physician" Rule

   Under the so-called "treating physician" rule, the ALJ must generally give "more weight

to medical opinions" from a claimant's "treating source" — as defined in the regulations —

when determining if the claimant is disabled.   See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3]

Treating sources, which include some professionals other than physicians, see id.

§§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone or from reports of individual

examinations, such as consultative examinations," id. §§ 404.1527(c)(2), 416.927(c)(2).   The

Second Circuit has summarized the deference that must be accorded the opinion of a "treating

source" as follows:

   Social Security Administration regulations, as well as our precedent, mandate
   specific procedures that an ALJ must follow in determining the appropriate
   weight to assign a treating physician's opinion.   First, the ALJ must decide
   whether the opinion is entitled to controlling weight.   "[T]he opinion of a

---

   [3]   Although the SSA has since revised its rules to eliminate the treating-physician rule,
because the claim here was filed before March 27, 2017, the rule applies in this case.   See, e.g.,
Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

claimant's treating physician as to the nature and severity of [an] impairment is
given 'controlling weight' so long as it 'is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with the other
substantial evidence in [the] case record.'"   Burgess, 537 F.3d at 128 (third
brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).   Second, if the ALJ
decides the opinion is not entitled to controlling weight, it must determine how
much weight, if any, to give it.   In doing so, it must "explicitly consider" the
following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature,
and extent of treatment; (2) the amount of medical evidence supporting the
opinion; (3) the consistency of the opinion with the remaining medical evidence;
and (4) whether the physician is a specialist."   Selian v. Astrue, 708 F.3d 409,
418 (2d Cir. 2013) (per curiam) (citing Burgess, 537 F.3d at 129 (citing 20
C.F.R. § 404.1527(c)(2))).   At both steps, the ALJ must "give good reasons in
[its] notice of determination or decision for the weight [it gives the] treating
source's [medical] opinion."   Halloran v. Barnhart, 362 F.3d 28, 32 (2d
Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)) . . . .   An ALJ's
failure to "explicitly" apply the Burgess factors when assigning weight at step two
is a procedural error.   Selian, 708 F.3d at 419-20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019) (alterations in original).   Accordingly,

the Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not

provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will

continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set

forth reasons for the weight assigned to a treating physician's opinion."   Halloran, 362 F.3d at

33; accord Estrella, 925 F.3d at 96; see also Greek, 802 F.3d at 375-77.

Nonetheless, the Commissioner is not required to give deference to a treating physician's

opinion where the treating physician "issued opinions that are not consistent with other

substantial evidence in the record, such as the opinions of other medical experts."   Halloran, 362

F.3d at 32 (citation omitted).   In fact, "the less consistent [a treating physician's] opinion is with

the record as a whole, the less weight it will be given."   Snell v. Apfel, 177 F.3d 128, 133 (2d

Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588

(2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to

resolve.") (citation omitted).   Finally, a "slavish recitation of each and every [factor listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing <u>Halloran</u>, 362 F.3d at 31-32), and even where the ALJ fails to explicitly apply the "<u>Burgess</u> factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed.'"   <u>Estrella</u>, 925 F.3d at 96 (quoting <u>Halloran</u>, 362 F.3d at 32).

D.   <u>Credibility Determinations</u>

"It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." <u>Carroll v. Sec'y of Health & Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983) (citing <u>Perales</u>, 402 U.S. at 399) (additional citations omitted).   Thus, the ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." <u>Tejada v. Apfel</u>, 167 F.3d 770, 775-76 (2d Cir. 1999) (summarizing the holding of and citing with approval <u>Pascariello v. Heckler</u>, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)).   Nonetheless, when discounting a claimant's credibility regarding his or her residual functional capacity, regulations impose some burden on the ALJ to explain his or her decision.   As the Second Circuit has stated:

> When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929; <u>see</u> <u>McLaughlin v. Sec'y of Health, Educ. & Welfare</u>, 612 F.2d 701, 704-05 (2d Cir. 1980), but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.   <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).

<u>Genier</u>, 606 F.3d at 49; <u>see also</u> 20 C.F.R. § 404.1529.   To evaluate a claimant's assertion of a

limitation, the ALJ must engage in a two-step process:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  That requirement stems from the fact that subjective assertions of pain <u>alone</u> cannot ground a finding of disability.  20 C.F.R. § 404.1529(a).  If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record.  <u>Id.</u>  The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."  20 C.F.R. § 404.1512(b)(3); <u>see also</u> 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

<u>Genier</u>, 606 F.3d at 49 (alterations and emphasis in original).

The SSA has issued regulations relating to reports of pain or other symptoms affecting the ability to work by a claimant for disability benefits.  <u>See</u> 20 C.F.R. § 404.1529(c).  These regulations provide, <u>inter alia</u>, that the SSA "will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements."  <u>Id.</u> § 404.1529(c)(2).  The regulations also provide that the SSA "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence."  <u>Id.</u> § 404.1529(c)(4).

Where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll</u>, 705 F.2d at 643); <u>accord</u> <u>Craig</u>, 218 F. Supp. 3d at 263.   The ALJ must make this

determination "in light of medical findings and other evidence[ ] regarding the true extent of the pain alleged by the claimant."   Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (internal quotation marks omitted) (quoting McLaughlin, 612 F.2d at 705).   However, where an ALJ gives specific reasons for finding the claimant not credible, the ALJ's credibility determination "is generally entitled to deference on appeal."   Selian, 708 F.3d at 420 (citing Calabrese v. Astrue, 358 F. App'x 274, 277 (2d Cir. 2009) (summary order)).   Thus, "[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints."   Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

III.   DISCUSSION

Morales raises two grounds for reversing the ALJ's decision: (1) the ALJ did not properly weigh the medical opinion evidence in determining Morales's RFC, Pl. Mem. at 11-20; and (2) the ALJ did not correctly evaluate Morales's testimony, id. at 20-23.

A.   Whether the ALJ Properly Weighed the Medical Evidence in Determining Morales's RFC

A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996).   The SSA has stated that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be

expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.; accord Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir. 1984) ("[I]n making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing.") (citation omitted). Nonetheless, the Second Circuit has held that:

> [w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed.

Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (citation omitted); accord Cruz v. Astrue, 941 F. Supp. 2d 483, 498 (S.D.N.Y. 2013).

Morales argues that "[t]he ALJ's suggestion that his mental residual functional capacity ('RFC') finding for Ms. Morales is consistent with the opinions from treating psychiatrist Dr. Mbadugha and the opinions from the Administration's examining psychologist Dr. Stapert is contradicted by the record." Pl. Mem. at 13 (internal citations omitted). Specifically, Morales claims that the "ALJ's failure to address [the various marked and moderate-to-marked] findings from Dr. Mbadugha after suggesting that he largely agreed with the opinions from the treating psychiatrist without further explanation is contrary to Social Security Ruling ('SSR') 96-8p" and thus is a reversible error. Id. at 13-14 (internal citations omitted). However, the ALJ acknowledged both the marked and moderate-to-marked findings of Dr. Mbadugha and explained that "his marked limitations are obviated or accommodated by the restrictions given in this finding: limiting the claimant's interaction with others, limiting her to simple tasks consistent with unskilled work, and precluding stressful, fast-paced work." R. 33-34. This

19

explanation satisfies SSR 96-8p.

Morales's central argument is that the ALJ traversed the treating-physician rule by failing to provide "even a minimal articulation for why he discounted many of the findings from Drs. Mbadugha and Stapert." Pl. Mem. at 14-15.   As a preliminary matter, Dr. Stapert was merely a one-time consultative examiner, see R. 32, and thus is not a treating source, see 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Nevertheless, the ALJ did explain that "Dr. Stapert's opinion is consistent with her findings of below-average cognitive functioning and impaired concentration"; that the opinion regarding Morales's "ability to relate adequately with others is consistent with the claimant's history of trauma, her legal history, and with her reported symptoms of avoidance and irritability"; but noted that the opinion regarding "concentration and memory deficits" justified only "some limitation on the claimant's ability to learn new tasks, but I do not see this to be marked except in the context of complex work." R. 32.

The ALJ also compared Dr. Stapert's opinion to that of Dr. Mbadugha's, noting that Dr. Mbadugha had a "longstanding treating relationship" with Morales and found that Morales would "be at most mildly limited" regarding understanding, remembering, and carrying out simple instructions. Id.   This conclusion was justified given that there is substantial evidence in the record that is inconsistent with marked limitations. See, e.g., R. 329-30 (Morales prepares food, cleans, uses public transportation, and pays bills); R. 440 ("There is no evidence of limitation in the claimant's ability to follow and understand simple directions and instruction and perform simple tasks independently. There appears to be moderate limitation in her ability to maintain attention and concentration, maintain a regular schedule, make appropriate decisions, relate adequately with others, and appropriately deal with stress."); R. 534 (Morales appeared "well," "[a]lert and oriented," "pleasant and cooperative"); R. 743 (Morales was "clear and

coherent" and showed "no abnormalities of thought or perceptual disturbances").

Dr. Mbadugha is a psychiatrist, see R. 457, who Morales saw multiple times between 2014 and 2017, see id., and thus is a treating source, see 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Accordingly, Dr. Mbadugha's opinions were entitled to controlling weight in the ALJ's calculation of Morales's RFC if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with the other substantial evidence in [the claimant's] case record."   See id. §§ 404.1527(c)(2), 416.927(c)(2).   Here, the ALJ gave "partial but much greater weight" to Dr. Mbadugha's opinions in calculating Morales's RFC because he found Dr. Mbadugha's opinions somewhat speculative and addressed by the restrictions by the RFC.   See R. 33-34.

As for the "marked" limitations found by Dr. Mbadugha, the ALJ was entitled to conclude that they would not interfere with Morales working given that Dr. Mbadugha specifically found the he did not "anticipate any barriers to the claimant working full time," R. 461 — a statement that was cited by the ALJ, R. 33.   Morales points to parts of Dr. Mbadugha's records that she asserts show that mental status exams "documented" certain abnormal conditions.   See Pl. Reply at 1.   But these conditions were largely self-reported by Morales, and thus were not findings by Dr. Mbadugha.   For example, Morales asserts that she was "documented" to have "difficulty thinking or concentrating," id. (citing R. 666, 684, 723, 733, 841-84), but these same records show that these statements came from Morales herself and that she sometimes characterized her difficulty concentrating as occurring only "at times," see, e.g., 723, 793, 941.   Dr. Mbadugha, however, indicated his own finding on almost all of the same dates that Morales's "thought process" was "logical" — eschewing other choices on the form such as "tangential," "loose" or "slowed thinking," see, e.g., R. 668, 724 (capitalization

21

omitted), and that her perception was within normal limits, see, e.g., 668, 685, 734.   There are many other notes indicating normal functioning.   See R. 667-69 (depressed mood but otherwise normal mental status findings including cooperative attitude and full affect); R. 708-09 (euthymic mood and other normal mental status findings including cooperative attitude and full affect); R. 801 ("Patient with good medication compliances, denies significant side effects and does not appear acutely symptomatic.   Patient appears euthymic and likely at psychiatric baseline."); R. 915 (euthymic mood and other normal mental status findings including cooperative attitude and full affect).   The ALJ was entitled to use those findings — in combination with Dr. Mbadugha's unequivocal statement that he did not "anticipate any barriers to the claimant working full time," R. 461 — to reject the notion that the "marked" limitations found by Dr. Mbadugha would preclude all work.   See also Woodmancy v. Colvin, 577 F. App'x 72, 75 (2d Cir. 2014) (summary order) ("record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions") (citation omitted); Legg v. Colvin, 574 F. App'x 48, 49 (2d Cir. 2014) (summary order) (medical evidence, reports of other physicians, and doctor's own treating notes did not support a doctor's own findings with regard to claimant's limitations).

Morales argues that the ALJ failed to properly consider the factors described in 20 C.F.R. §§ 404.1527(c), 416.927(c) in determining the weight to give to Dr. Mbadugha's opinions.   See Pl. Mem. at 18-19.   However, as already discussed, the ALJ properly considered the "supportability" and "consistency" of Dr. Mbadugha's opinions, which are two of the relevant 20 C.F.R. §§ 404.1527(c), 416.927(c) factors.   The ALJ also addressed the length of the treating relationship, see R. 33, which is another factor, see 20 C.F.R. §§ 404.1527(c), 416.927(c).   The fact that the ALJ did not explicitly address each of the factors is of no

consequence because a "slavish recitation of each and every factor" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear."   Atwater, 512 F. App'x at 70 (citing Halloran, 362 F.3d at 31-32).   Thus, Dr. Mbadugha's opinions were given the appropriate weight and the ALJ did not violate the treating-physician rule.

Morales takes issue with the ALJ's treatment of Dr. Marantz's opinions, stating "[t]he ALJ also failed to provide more than a conclusory rejection of the opinions from treating psychologist Dr. Marantz" and "failed to identify substantial evidence contradicting the opinions and findings from Dr. Marantz."   Pl. Mem. at 15-16.   Specifically, Morales argues that the ALJ improperly rejected "Dr. Marantz's opinion that Ms. Morales was restricted in her ability to perform simple, one-to-two step instructions," his failure to "explain the weight given to any of the other specific mental limitations described by Dr. Marantz," and the fact that "[h]e only makes a vague conclusion that Dr. Marantz's opinion that Ms. Morales will miss work more than three times a month is unexplained."   Pl. Mem. at 12.   Dr. Marantz is also a treating source under the regulations, see 20 C.F.R. § 404.1527(a)(2), 416.927(a)(2), because she treated Morales in 2016 and 2017, see, e.g., R. 739, 973, and thus would likewise be entitled to controlling weight so long as her opinions are well supported and consistent with the record, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

As the ALJ acknowledged, "Dr. Marantz'[s] opinion is an outlier among all the opinions in the record."   R. 33.   The ALJ noted that Dr. Marantz's opinion had the most severe limitations in that there was no area of mental activity that Dr. Marantz thought Morales was only mildly or moderately limited in.   See id.   Such opinions are certainly unsupported by the record, and are not even supported by treating source Dr. Mbadugha, who found that Morales was only moderately impaired in numerous areas, R. 460, and who authored copious notes

reflecting that Morales presented normally.   While Dr. Marantz's ultimate conclusion that

Morales is disabled is similar to Dr. Stapert's conclusion that Morales's "cognitive

problems . . . may significantly interfere with [her] ability to function on a daily basis," R. 440,

as discussed above, the ALJ could properly discount that opinion.   As for the ALJ's

consideration of the factors described in 20 C.F.R. §§ 404.1527(c), 416.927(c) relevant to

determining the weight to give to Dr. Marantz's opinions, see Pl. Mem. at 18-19, as already

discussed, the ALJ properly considered the "supportability" and "consistency" of Dr. Marantz's

opinions, which are two of the relevant factors.   See 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ also addressed the frequency of treatment, see R. 33, which is yet another factor, see 20

C.F.R. §§ 404.1527(c), 416.927(c).   The fact that the ALJ did not explicitly address each of the

factors is, again, of no consequence because "the ALJ's reasoning and adherence to the

regulation are clear."   Atwater, 512 F. App'x at 70 (citing Halloran, 362 F.3d at 31-32).

　　　　Morales argues that the ALJ improperly gave "great weight" to psychological consultant

Dr. Nobel, noting "these types of opinions are generally entitled to the least amount of weight,"

and that Dr. Nobel reviewed Morales's record before it contained psychiatric treatment records.

Pl. Mem. at 16-17.   Certainly, the lone opinion of a non-examining source would not be

sufficient to constitute substantial evidence to support a finding in the face of well-supported and

consistent contradictory findings from treating sources.   But that was not the case here.   The

ALJ correctly noted that Dr. Nobel's opinion was "generally consistent with the later opinion of

Dr. Mbadugha" and other evidence put into the record following Dr. Nobel's analysis.   R. 32.

Dr. Nobel's opinion is in fact supported by the record.   For example, Dr. Nobel found that

Morales was moderately limited in her "ability to maintain attention and concentration for

extended periods," "to perform activities within a schedule," and "to complete a normal workday

and workweek without interruptions from psychologically based symptoms," <u>see</u> R. 157-58,

which is similar to Dr. Stapert's finding that Morales has only moderate limitations in "her

ability to maintain attention and concentration, maintain a regular schedule," R. 440, and

Dr. Mbadugha's opinion that she has only moderate limitations in "[p]erform[ing] activities

within a schedule and consistently be punctual," R. 460.   Given that Dr. Nobel's opinion is

supported by the record, the ALJ was entitled to rely on it.   <u>See</u> 20 C.F.R. §§ 404.1527(e),

416.927(e) (adopting the rules in 20 C.F.R. § 404.1513a, which states an ALJ may "consider this

evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our

Federal or State agency medical or psychological consultants are highly qualified and experts in

Social Security disability evaluation"); <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 n.5 (2d Cir. 1995)

("opinions of nonexamining sources [can] override treating sources' opinions provided they are

supported by evidence in the record") (citation omitted).

Morales also takes issue with the ALJ's treatment of the opinion from Dr. Graziano.   Pl.

Mem. at 19-20.   Dr. Graziano examined Morales only once and is thus not a treating source.

<u>See</u> <u>Hoy v. Saul</u>, 2020 WL 1467273, at *2 (W.D.N.Y. Mar. 25, 2020) (citations omitted); <u>see</u>

<u>also</u> 20 C.F.R. § 404.1527(a)(2) (to qualify as a "treating source" there must be an "ongoing"

treatment relationship).   The ALJ noted that the opinion was not explained in terms of the

findings that were included in the assessment.   <u>See</u> R. 34.   As recognized by the ALJ, <u>see</u> <u>id.</u>,

the opinion is inconsistent with the record and the underlying assessment, <u>compare</u> R. 979

(Dr. Graziano checking boxes stating that Morales has "moderate-to-marked" and "marked"

limitations in all but two areas of concentration and persistence and all but two areas of social

interaction) <u>with</u> R. 433 (physician's assessment that there was "[n]o evidence of impaired

judgment or significant memory impairment"); R. 440 (Dr. Nobel's statement that Morales has

"moderate limitation in her ability to maintain attention and concentration," has "[g]ood" insight and "[f]air" judgment); and R. 984 (Dr. Graziano's statement describing Morales's impulse control, insight and judgment, and attention and concentration as "fair").   Thus, contrary to Morales's assertions, see Pl. Mem. at 19-20, the ALJ did not reject this opinion just because it was offered at the request of Morales's representative and the ALJ gave plausible reasons for discounting the opinion.

In the end, there was substantial evidence to support the ALJ's RFC even if there was also substantial evidence to support a contrary conclusion.   The opinions of Drs. Stapert, Mbadugha, and Nobel all support a finding that Morales is capable of limited unskilled work with the restrictions added by the ALJ.   In several key areas, Dr. Mbadugha found Morales has at most a moderate limitation.   See R. 460 (moderately impaired in her ability to understand, remember, and carry out detailed instructions; "[p]erform activities within a schedule and consistently be punctual"; "[p]erform at a consistent pace"; "[a]ccept instructions and respond appropriately to criticism"; "[m]aintain socially appropriate behavior"; and "[m]ake plans independently" and no or mild impartments in her ability to "[u]nderstand and remember one-to-two step instructions"; "[c]arry out simple, one-to-two step instructions"; "[s]ustain an ordinary routine"; "[m]ake simple work-related decisions"; "[a]sk simple questions or request assistance"; "[a]dhere to basic standards of neatness"; and to adapt under most circumstances).   Dr. Nobel found no more than moderate limitations regarding all mental abilities and no limitations in "ability to remember locations and work-like procedure," "ability to understand and remember very short and simple instructions," "ability to carry out very short and simple instructions," "ability to sustain an ordinary routine without special supervision," "ability to work in coordination with or in proximity to others," "ability to make simple work-related decisions,"

"ability to interact appropriately with the general public," "ability to ask simple questions or request assistance," "ability to maintain socially appropriate behavior and to adhere to basic standard of neatness and cleanliness," and "ability to be aware of normal hazards and take appropriate precautions."  R. 157-58.  Dr. Stapert likewise found "[t]here is no evidence of limitation in the claimant's ability to follow and understand simple directions and instructions and perform simple tasks independently."  R. 440.  Furthermore, a conclusion that Morales has some limitations does not mean she cannot work.  See, e.g., Wells v. Colvin, 87 F. Supp. 3d 421, 435-36 (W.D.N.Y. 2015) (that plaintiff "had psychiatric problems which may impair her ability to function on a regular basis" did not prevent her from working).  The ALJ dealt with the marked limitations found by Dr. Mbadugha, among others, through restrictions in his RFC, such as limiting her interaction with others, limiting her to unskilled work, and precluding stressful, fast-paced work.  See R. 33-34.  Of course, to the extent the evidence is "susceptible to more than one rational interpretation, . . . the Commissioner's conclusion must be upheld." Weather v. Astrue, 32 F. Supp. 3d 363, 368 (N.D.N.Y. 2012) (citing Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982)).

Finally, Morales argues that the ALJ failed to resolve the inconsistencies between his RFC which stated that Morales could work, the VE's testimony which stated that moderate limitations in attention and concentration would eliminate all work, and the opinions of Drs. Stapert and Mbadugha whose moderate-limitation findings were undisputed by the ALJ. See Pl. Mem. at 13-14.  However, "Social Security regulations do not provide a standard definition of the term" moderate.  See Brierley v. Saul, 2020 WL 709609, at *5 (W.D.N.Y. Feb. 12, 2020) (citations omitted).  In questioning the VE, Morales's attorney asked if a person who could not "maintain attention and concentration" for "up to one-third of the day" could work.

R. 127-28.   Not surprisingly, the VE responded "[n]o."   Id.   Dr. Stapert, however, does not

define "moderate" in the context of his opinion, see R. 440, nor did Dr. Nobel, see R. 157-58.

Dr. Mbadugha defined "moderate" limitations as "[s]ymptoms occasionally interfere with ability

(Occasional – up to 1/3 of an 8-hr. workday)."   R. 460 (emphasis in original).   The ALJ also

did not define "moderate" in the context of his findings.   See R. 28-34.   Thus, it cannot be said

that the ALJ's findings are inconsistent with his acceptance of certain medical opinion evidence

and of the VE's testimony.   Notably, "[t]he Second Circuit has held that a moderate limitation in

the area of concentration, persistence, or pace would not necessarily preclude the ability to

perform unskilled work."   Lowry v. Comm'r of Soc. Sec., 2017 WL 1290685, at *4 (N.D.N.Y.

Mar. 16, 2017) (citing Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010)) (additional citations

omitted), adopted by 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017).   Thus, a moderate limitation

in this area is not inconsistent with an RFC to perform simple work.   See id.

> B.   The ALJ Properly Considered Morales's Hearing Testimony

Morales argues "[t]he ALJ's conclusory finding that Plaintiff's statements regarding her

mental impairments [are] 'not entirely consistent' with the record is not a sufficient explanation

of why her allegations were discounted according to the Commissioner's Regulations and

Ruling, which require the ALJ to evaluate a claimant's subjective statements under a number of

factors in 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p."   Pl. Mem. at 21-22 (citations

omitted).   Morales accuses the ALJ of "simply follow[ing] often maligned boilerplate language

with a summary of some of the evidence and conclusory findings."   Id.

SSA Rule 16-3p provides: "In evaluating an individual's symptoms, it is not sufficient for

our adjudicators to make a single, conclusory statement that 'the individual's statements about

his or her symptoms have been considered' or that 'the statements about the individual's

symptoms are (or are not) supported or consistent.'"   The ALJ's analysis conformed to Rule 16-3p.   In fact, the ALJ specifically noted that Morales's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record <u>for the reasons explained in this decision</u>."   R. 32 (emphasis added).   The ALJ devoted several pages of analysis to provide his reasoning as to Morales's actual limitations, which included the ALJ's discussion of the opinions of treating and non-treating sources, as well as Morales's activities of daily living and hearing testimony.   <u>See</u> R. 30-35.   Given the detailed analysis performed by the ALJ, we cannot agree that his analysis was "conclusory" in any way.

As previously noted, "[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints."   <u>Aponte</u>, 728 F.2d at 591 (internal citations omitted); <u>accord</u> <u>Them v. Colvin</u>, 2015 WL 10635499, at *13 (S.D.N.Y. Dec. 22, 2015); <u>Vargas v. Astrue</u>, 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011); <u>see</u> <u>also</u> 42 U.S.C. § 405(g).   Here, there is substantial evidence supporting the Commissioner's credibility determination and the RFC.   For example, Morales's statement that she feels "mad and sad at the same time," R. 104, is inconsistent with the medical records that repeatedly state she had a "euthymic" mood, <u>see</u>, <u>e.g.</u>, R. 685, 708, 724, 801, 869, 915. Her statement that she is "enraged" when around a lot of people, R. 104, is accommodated in the ALJ's RFC, <u>see</u> R. 35 ("limited interaction with coworkers and the public").   As discussed above, Morales's testimony regarding her problems with concentration, <u>see</u> R. 111, 122, is not entirely supported by the record and to the extent she has some limitations, these were likewise factored into the ALJ's RFC, <u>see</u> R. 35 (limiting her to simple tasks and precluding stressful, fast-paced

work).   Morales's statement that she can become physically violent, <u>see</u> R. 117, is unsupported

by other records, <u>see</u>, <u>e.g.</u>, R. 686, 709, 735, 842, 916 (Morales denies any danger to herself and

others).

We note that an "ALJ is not required to explicitly address each and every statement made

in the record that might implicate his evaluation of the claimant's credibility as long as 'the

evidence of record permits [the court] to glean the rationale of an ALJ's decision.'"   <u>Colbert</u>,

313 F. Supp. 3d at 580 (quoting <u>Cichocki</u>, 534 F. App'x at 76).   Here, the ALJ engaged in an

extensive evaluation of the record, giving a detailed explanation of how he came to determine

Morales's actual limitations and the reasons they were at odds with the limitations claimed by

Morales.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, Morales's motion for judgment on the pleadings (Docket # 15)

is denied, and the Commissioner's motion for judgment on the pleadings (Docket # 19) is

granted.   The Clerk is requested to enter judgment.

SO ORDERED.

Dated: September 8, 2020
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge